IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID GOODEN, | ) | No. C 13-0352 LHK (PR) |
| Plaintiff, | ) ) | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY |
| v. | ) ) | JUDGMENT; REFERRING CASE TO PRO SE PRISONER |
| W. BAPTISTA, et al., | ) ) | SETTLEMENT PROGRAM; INSTRUCTIONS TO THE CLERK |
| Defendants. | ) ) | |

Plaintiff, a state prisoner proceeding *pro se*, filed an amended complaint under 42 U.S.C. § 1983, arguing that Correctional Officers Baptista, Mart, and Garza used excessive force upon him, and Baptista was deliberately indifferent to plaintiff's serious medical needs. Defendants have filed a motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. Having carefully considered the papers submitted, the court DENIES defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff alleges that: (1) Baptista, Garza, and Mart used excessive force against him, and (2) Baptista was deliberately indifferent to plaintiff's serious medical needs. In response, defendants argue that they are entitled to summary judgment and qualified immunity on the

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program; Instructions to the Clerk
P:\PRO-SE\LHK\CR.13\Gooden352denmsj.wpd

excessive force claim.[1]

The following facts are taken in the light most favorable to plaintiff.

On July 9, 2012, plaintiff was housed at Pelican Bay State Prison's Psychiatric Services Unit. Plaintiff was suicidal and told defendants Baptista and Garza of his feelings. (Am. Compl. at 5.) Baptista and Garza ordered plaintiff to turn around for handcuffing. (*Id.*) Plaintiff was handcuffed and ordered to kneel down so that leg shackles could be placed upon him. (*Id.*) After the shackles were in place, Baptista then pushed plaintiff's head down onto the concrete floor and repeatedly banged plaintiff's head onto the ground. (*Id.*) Garza then held plaintiff as Baptista lifted plaintiff's head and turned it toward Mart, who began punching plaintiff several times in plaintiff's left eye. (*Id.*) After the beating, plaintiff was placed on a gurney and taken to Sutter Coast Hospital outside of the prison. (*Id.*) Medical staff at Sutter Coast Hospital determined that plaintiff suffered head and facial trauma. (Opp. at 7.)

In order to cover up the wounds on plaintiff's face, Baptista forced plaintiff to wear a dark netted elastic mask over plaintiff's face. (Am. Compl. at 6.) This mask is referred to as a "spit mask." (*Id.*) It is normally used as a precaution for inmates who have a history of spitting on people. (*Id.*) Plaintiff did not have a history of spitting on people, and had never had to wear a spit mask before. (*Id.*) After placing the spit mask on plaintiff, prison staff told doctors at Sutter Coast Hospital that the spit mask was not allowed to be removed to conduct a thorough examination on plaintiff's injuries because plaintiff was a spitter. (*Id.*) Doctors then had to work around the spit mask to attempt to conduct a medical examination. (*Id.*) As a result of the beating, plaintiff suffered vision impairment, and head injuries such as a hematoma above his eye and periorbital swelling around his eye. (*Id.* at 4.)

---

[1] Defendants' motion for summary judgment does not address plaintiff's separate deliberate indifference claim against Baptista. Although defendants assert that plaintiff improperly raises the deliberate indifference claim for the first time in plaintiff's opposition, the court's February 7, 2014 order of service specifically found that plaintiff indeed stated a separate Eighth Amendment claim against Baptista. Defendants also argue that plaintiff's opposition hinted for the first time at a retaliation claim which was not raised in plaintiff's amended complaint. The court agrees that plaintiff has not properly presented a retaliation claim, and no such claim is considered at this time.

# ANALYSIS

I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts, and "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with

1  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
2  forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,
3  1158 (9th Cir. 1999).

4  II.     <u>Excessive Force Claim</u>

5       The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments
6  Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When prison
7  officials stand accused of using excessive force in violation of the Eighth Amendment, the core
8  judicial inquiry is whether force was applied in a good faith effort to maintain or restore
9  discipline, or maliciously and sadistically for the very purpose of causing harm. *Id.* at 6-7. In
10 determining whether the use of force was for the purpose of maintaining or restoring discipline,
11 or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for
12 application of force, the relationship between that need and the amount of force used, the extent
13 of any injury inflicted, the threat reasonably perceived by the responsible officials, and any
14 efforts made to temper the severity of a forceful response. *Id.* at 7. In reviewing these factors,
15 courts must accord prison administrators wide-ranging deference in the adoption and execution
16 of policies and practices to further institutional order and security. *Jeffers v. Gomez*, 267 F.3d
17 895, 917 (9th Cir. 2001).

18       Taking the evidence in the amended complaint as true, and drawing all inferences
19 therefrom in plaintiff's favor, there is a genuine issue of material fact as to whether defendants'
20 use of force was excessive. According to plaintiff, plaintiff complied with defendants'
21 instructions to kneel down so that leg shackles could be placed upon him. Plaintiff asserts that
22 he did nothing to warrant getting his head slammed repeatedly against the concrete floor and
23 then punched several times in the head. In stark contrast, defendants state that, prior to putting
24 the leg shackles on plaintiff, plaintiff jumped to his feet and spit toward Baptista and then Garza.
25 (Garza Decl. ¶ 4.) Defendants also allege that once Garza and Baptista were able to subdue and
26 lower plaintiff to the ground, plaintiff began kicking and swinging his head and upper body in an
27 attempt to hit Garza and Baptista. (*Id.* ¶ 5.) Because of the struggle, state defendants, Mart
28

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program;
Instructions to the Clerk
P:\PRO-SE\LHK\CR.13\Gooden352denmsj.wpd      4

1  assisted Garza and Baptista in restraining plaintiff, and as Mart was doing so, plaintiff kicked
2  Mart's left knee. (*Id.*) Once plaintiff was in control on the ground, defendants claim that they
3  were able to place leg irons onto plaintiff's ankles, and a spit mask was placed over plaintiff's
4  head. (*Id.*)

5       Plaintiff's version of events differs greatly from defendants' version of events.
6  Accepting plaintiff's account as true, as this court must, an inference could certainly be drawn
7  that defendants assaulted plaintiff for the purpose of causing harm.

8       Defendants' secondary argument that they are entitled to qualified immunity is
9  unpersuasive. The defense of qualified immunity protects "government officials . . . from
10 liability for civil damages insofar as their conduct does not violate clearly established statutory
11 or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,
12 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine
13 whether the plaintiff has alleged the deprivation of an actual constitutional right and whether
14 such right was clearly established such that it would be clear to a reasonable officer that his
15 conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808,
16 818 (2009). Regarding the first prong, the threshold question must be, taken in the light most
17 favorable to the party asserting the injury, do the facts alleged show the officer's conduct
18 violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of
19 whether a constitutional right was clearly established must be undertaken in light of the specific
20 context of the case, not as a broad general proposition. *Id.* at 202. The relevant, dispositive
21 inquiry in determining whether a right is clearly established is whether it would be clear to a
22 reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

23       The court finds granting summary judgment on the ground of qualified immunity is
24 improper in this case. A dispute of fact exists as to what occurred after defendants ordered
25 plaintiff to kneel down to await placement of leg shackles. Resolving all factual disputes in
26 favor of plaintiff, the court concludes that defendants violated plaintiff's clearly established right
27 to be free from excessive force. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003)
28

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program;
Instructions to the Clerk
P:\PRO-SE\LHK\CR.13\Gooden352denmsj.wpd     5

1  ("the law regarding a prison guard's use of excessive force was clearly established by 1994").
2  Granting summary judgment on the ground of qualified immunity is "improper if, under the
3  plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer
4  could not have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196
5  (9th Cir. 2000). Here, under plaintiff's version of the facts, no reasonable officer could believe
6  that defendants' actions were permitted under the Eighth Amendment.
7        Accordingly, defendants' motion for summary judgment is DENIED.
8  III.    Referral to Pro Se Prisoner Settlement Program
9        Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff
10 for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the
11 Pro Se Prisoner Settlement Program for settlement proceedings on the excessive force claim set
12 forth above. Settlement proceedings shall also include discussion regarding the deliberate
13 indifference claim against Baptista. The proceedings will consist of one or more conferences as
14 determined by Judge Vadas. The conferences shall be conducted with defendants, or their
15 representative, attending by videoconferencing if they so choose. If these settlement proceedings
16 do not resolve this matter, the court will then set this matter for trial and consider a motion from
17 plaintiff for appointment of counsel.

18                     **CONCLUSION**

19     1.    Defendants' motion for summary judgment is DENIED.
20     2.    The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner
21 Settlement Program for settlement proceedings on the claims in this action, as described above.
22 The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of
23 this order. Judge Vadas shall coordinate a time and date for a settlement conference with all
24 interested parties or their representatives and, within **ten (10) days** after the conclusion of the
25 settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.
26 If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion
27 for appointment of counsel, and the court will then set this matter for trial.
28

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program;
Instructions to the Clerk
P:\PRO-SE\LHK\CR.13\Gooden352denmsj.wpd    6

3.      The clerk of the court shall mail a copy of this order to Judge Vadas in Eureka, California.

4.      The instant case is STAYED pending the settlement conference proceedings. The clerk shall ADMINISTRATIVELY CLOSE this case until further order of the court.

IT IS SO ORDERED.

DATED: 8/11/14

LUCY H. KOH
United States District Judge